Pee GuRIAM.
 

 Armstreet Stubblefield, being possessed of sundry land warrants, on the 5th of August, 1807, entered into a covenant with Gideon Pillow and others (who had associated themselves as a company for the purpose of locating lands) to locate those warrants; and if they should locate them or any of them on vacant lands, he covenanted that they should be entitled to one third part of the average quality of such parts as they should locate. Pursuant to this agreement, the company located and surveyed a part of said warrants, to wit, three tracts of 640 acres each, and one other warrant, No. 801, and for 2,560, in the names of A. Stubblefield and John Swan, and for their benefit. Grants having issued for the three tracts of 640 acres each, Stubblefield sold and conveyed them to others, not reserving any part for the locators. On the 13th of December, 1812, Stubblefield conveyed by deed with warranty to Gideon Pillow, as agent for the company, one undivided moiety of the tract of 2,560 acres by them located, as compensation in part for their services, under the covenant of the 5th of August, 1807, the grant for that tract not having then issued, nor has it yet issued. On the 6th of April, 1812, judgment was obtained by Howard against Stubblefield in * the Circuit Court for Smith County, for the sum of $552 and costs. Execution.issued on the 5th of June, 1812, which was stayed by injunction. A writ of
 
 fi. fa.
 
 issued the 24th of February, 1813, directed to the sheriff of Lincoln County,
 
 *548
 
 and was by him levied on the tract of 2,560 acres, and all A. Stub-blefield’s
 
 right
 
 thereto was sold to Asa Shute and James Vaux for $700. These purchasers at the sheriff’s sale filed their bill against the locating company and Stubblefield, alleging that they had taken, the plate and ^certificate of survey, together with the warrant, from the surveyor’s office for the purpose of preventing the sheriff from transferring it according to law, and with a view of procuring a grant to the locators. An assignment has been made to them by Stubble-field since the sale by the sheriff, but purporting to have been done before the judgment. The defendants rely on their covenant of the 5th of August, 1807, and deed of 18th of December, 1812 ; admit that the locators have procured a transfer of the plate and certificate since the sale by the sheriff, and say that they gave public notice as well as personal notice of their claim to the purchasers at the time of the sale by the sheriff. The notice is fully proved. And also that the 1,280 acres now claimed by them are not of sufficient value to compensate them for their services as stipulated in 1807. Asa Shute died since the commencement of this suit, and it has been revived by his heirs.
 

 Under the articles of the 5th of August, 1807, a question arises, whether the locators could, by bill in equity, have compelled a conveyance of the lands located that remained unsold at and immediately before the judgment in March, 1812. It would not have been permissible for him to have said, by way of defenge to such bill, You were entitled to one third of the whole, but I have sold two thirds to purchasers without notice, and to them you must look for two * thirds of your claim. It is true, indeed, I have put it out of your power to recover of them, but, notwithstanding that, I will keep the two thirds of the remaining tract. In such a defense the injustice would be palpable; the defense itself would be rejected. He would by his own acts be precluded from declining a conveyance of the
 
 whole
 
 residue. The defendants, having a right to a conveyance of the whole in equity, had an equitable estate in the whole at the period we are contemplating. It could not be reached by a judgment of subsequent date; each tract it is said must bear its own burden. This we believe to be correct where several tracts are owned in severalty, by the employer of the locator, and one jointly with another. In this latter case, if he could sell all of his own, throwing the burden
 
 *549
 
 upon that in which he is joint owner, he might subject the whole, and take away the share of his co-tenant for satisfaction of services incumbent upon him alone. The same reason is inapplicable to the case where he is the sole owner of all. As to the 1,280 acres, then, which form the ground of this controversy, they are not liable for the judgment, being, in the contemplation of the court, the estate of the defendant, as from the date of the articles. For the rule
 
 id factum, quod fieri
 
 debit, relates to the articles made in consideration of something to be done in future, if it shall be done accordingly, as well as in the case of money to be paid either wholly or in part in future; and is not this agreeable to the most perfect .justice ? Why should a judgment creditor, who looked originally to the personal responsibility of his debtor, be preferred to him who looked principally to the real estate of the debtor, which the services of the creditor are pledged to secure to him, and do in good faith and at much expense secure for him ? Is it wrong to say, let those services be recompensed so far as it is reasonable, and let the residue be liable to personal creditors, who but for this property created, as it * were, by the industry of the locator, would not perhaps have had any fund at all to resort to for satisfaction of their demands ? It is useless, with this view of the case, to inquire whether or not the purchaser, at a sale by execution, takes the lands purchased, subject to all equities attached to it in the hands of the debtor, especially as in this case the purchaser had actual and express notice of the defendant’s claim.
 

 Equally needless is it to inquire concerning the extent of the lien created by judgments. Whenever it shall become inevitably necessary to decide these questions, they will deserve the most mature consideration and the most apprehensive, circumspection* The effects on heirs, tenements, and on the contributions to be made between the latter; the effects of the differences that will be caused between State judgments and those rendered in the federal court, and the preference which a foreign creditor will have over a domestic one, that a confinement of the lien to the jurisdiction of the court will produce, will all be weighed with anxious attention. One of the deeds made by Stubblefield for part of the two thirds and more sold by him, was subsequent to the judgment. But it was sold for satisfaction of the judgment, and was bid off
 
 *550
 
 by the purchaser, on the same day the complainants purchased the lands in question. Therefore, as to the judgment creditor, it has sustained the burden the plaintiff says it ought to be charged with.
 

 Decree that the complainant’s bill shall be dismissed, with costs to be paid by the complainant.
 

 See
 
 Smith
 
 v.
 
 Brooks,
 
 3 Hay. 248, and note
 
 sub fin.